## . MAKING THE DOW TAX A CHARGE ON .LAND.

Common Pleas Court of Hamilton County.

ANNA M. FOLEY v. CHARLES E. ROTH, TREASURER, ET AL.

Decided, June 17, 1909.

*Constitutional Law—Provision Making Dow Tax a Lien on the Land
Where Liquor is Sold Void, When—Injunction Lies Against Spolia-
tion of a Landlord Who has Covenanted Against Such Sales and was
Ignorant of Their being Made—Police Power—Taxation—Liquor
Laws—Section 4364-12.*

The provision of Section 4364-12, making any balance of the Dow tax,
left after the sale of the chattels of a tenant for non-payment, a
lien upon the premises where the liquor is sold, is unconstitutional
and void as to landlord who has covenanted against such sales and
ignorant that they were being made, and the sales were in fact
made in a dwelling-house secretly to guests.

*Gideon C. Wilson,* for plaintiff.

*Henry T. Hunt* and *Alfred Bettman,* Prosecuting Attorneys,
contra.

DICKSON, J.

Plaintiff claims that she is the owner of a flat building on
Smith street in the city of Cincinnati, Ohio; that this building
is a brick dwelling-house suitable for dwelling purposes only;
that there is no store room therein; that the entire building is
divided into six separate flats, each suitable for dwelling pur-
poses and each rented for that purpose only; that she has owned
this property for about twenty years; that flat No. 4 was occu-
pied by Mrs. Frances McMann; the flat consisted of four rooms
—two bed rooms, one dining room and one kitchen; that she
occupied this flat during November and December, 1908.

Plaintiff further claims that Mrs. McMann was not at any time
while occupying that flat engaged in the business of trafficking
in intoxicating liquors; that she at no time during her tenancy
sold any liquor in that flat; that there was an express covenant
in the terms of the letting which prohibited the sale of liquor in
that flat.

Plaintiff further claims that the taxing power of the state through the defendant, Richardson, auditor, has entered upon the Dow tax duplicate of Hamilton county, Ohio, against Mrs. Mc-Mann the sum of $534.74 Dow tax; because on the 10th day of November, 1908, she was engaged in the business of trafficking in intoxicating liquors in that flat; that the defendant, Roth, treasurer, has levied upon and sold Mrs. McMann's chattels to pay said tax; that after crediting her with the net proceeds of this sale and allowing her certain other credits there remains unpaid a balance of $279.64. Plaintiff claims that unless restrained that the treasurer will certify this balance to the auditor and that this balance will be placed on the general tax duplicate as a charge against her land.

Plaintiff asks for relief, for an order restraining the state from taking any further steps in the matter and to prohibit the state from making this balance by the forced sale of her land. She claims that that part of the Dow tax law making this balance a charge against her land, and that also the means of collecting this balance out of this land are unconstitutional and void.

The defendant, the state of Ohio, admits that that house was owned by the plaintiff on that day in November, 1908, and prior and subsequent thereto; that she owned the property for about twenty years; that Mrs. McMann occupied that flat number 4 on that day in November; that the house was adapted for dwelling purposes only and that there was no store room in it. The defendant offered no proof against plaintiff's proof that one of the terms of the letting of that flat was that there was to be no business of trafficking in intoxicating liquors carried on therein.

The defendant offered evidence that liquor was sold on that day in that flat in violation of the Dow tax. This the plaintiff denied by her witnesses. The defendant makes no claim that plaintiff knew that liquor was sold there, and finally says that that land is chargeable with that balance of the tax and that it will, unless restrained, make this balance out of that land; that its conduct is not unconstitutional and prays that plaintiff's petition be dismissed.

The admissions made in the pleadings, made in open court; the undisputed evidence, and the claims made by both sides raise

squarely this issue: Can, under the Constitution of Ohio and under the Constitution of the United States, any balance of the Dow tax left after the sale of the chattels of a tenant, who was engaged in the business of trafficking in intoxicating liquors in a dwelling house, in a flat secretly to guests, be made a charge on the land, when the land owner has stipulated by a covenant in the letting that no liquors are to be sold there, and too, when the land owner is ignorant of, and could not with reasonable diligence have discovered the fact that the tenant had broken the covenant by selling liquor therein?

The business of trafficking in intoxicating liquors in this state is in an anomolous position. This position is caused either by public or politic policy or both. Either policy is an unruly horse to ride, and which when once astride, one is often led far from the domain of true law.

The Constitution of Ohio provides:

"No license to traffic in intoxicating liquors shall hereafter be granted in this state; but the General Assembly may, by law, provide against evils resulting therefrom."

This provision of the Constitution neither permits nor prohibits this business. It dodges the issue, shrinks from calling this business a crime, dubs it a producer of evil, and relegates its control to the realm of the police power vested in the General Assembly. This body has sought to restrain the evils by assessing a tax with penalties and stringent methods of collection.

The General Assembly has given us the Pond, the Scott, the Dow, and now the Dow-Aiken tax. Each, in its turn, except the Dow tax and the Dow-Aiken tax, has been by the courts declared unconstitutional. We have in this state no common law crime. The General Assembly only can tell us what is criminal. No evil is a crime unless declared to be such by the act of the General Assembly. Had the Constitution, the General Assembly, declared this business of trafficking in intoxicating liquors a crime, the solution of the problem in this case would be easy. There can be no crime without intent and this plaintiff would be relieved from this tax, there being neither intent nor knowledge on her part as to any sale. No act or acts by her had any-

thing in any way to do with this traffic or business. She had covenanted against it.

This business, this traffic, is not a crime. This tax is not a punishment. This tax has for its object the putting of a burden, for the purpose of restraining evils, upon those who engage in this traffic, in the form of a tax. This the General Assembly has a right to do. This General Assembly also has a right under the sovereignty of its taxing power, to prescribe stringent methods or means for the collection of this tax and also to prescribe severe penalties for default in payment. This body undoubtedly has this power over those who *voluntarily* participate in this traffic and reap the benefits thereby.

The question here is: Has this General Assembly under this sovereign power the right to burden the innocent as well as the guilty? Has it the right to burden those who reap no benefits—who have done the best they could to obey even the spirit of the law—the land owner, who insists upon a covenant in the letting, prohibiting this traffic on his premises?

If the General Assembly has the power to make the non-payment of this tax a lien upon an innocent land owner, why has it not the power also to make this tax a lien upon any other class or kind of individuals. Can the General Assembly under this police power act as it pleases? Is there no limit? To punish the innocent as well as the guilty is to make law obnoxious to the public and tends to create a disrespect for the law.

The innocent land owner is one class of tax-payers. To tax this one class for the protection of the public, of which it is a part, is to tax this one class twice. To tax this one class to protect it and all the public from the results of this evil, and from results which it has done its best to prevent, is radically wrong.

The power vested in the General Assembly to enact tax laws to restrain the evils resulting from the liquor business must be used with caution. The passage by the General Assembly of politic or unjust or unreasonable or despotic or tryannical or arbitrary laws will be interdicted by the courts. The courts have long had the power to restrain such acts of the General Assembly. The Constitution and the courts perform their best service when they protect the people from the conduct of a reck-

less or extravagant majority. The power of levying taxes and regulating the manner of their enforcement are within the power of the General Assembly, but they can only be used with respect to public and private rights alike. A court has the right to define the limits of any power. The courts of justice must never permit spoliation under the taxing power. To attempt to prevent the evils flowing from any source by p'acing an unequal burden upon those who have nothing to do with these evils is to violate a cardinal rule of procedure. To do justice is easy, but to make those who lose or suffer thereby, believe that justice has been done is difficult. It can never be good law to confiscate the land of a citizen in the guise of a tax on the land of the innocent to protect the morals of the public.

By the common law the plaintiff land owner has no right to enter the premises let, for any purpose, except upon invitation of the tenant. The flat in this case was the tenant's castle. A tenant has the right to resist the entrance of the land owner with force, and that force used is measured only by the tenant's successful resistance.

It has been said that the land owner reaps a benefit by this liquor business; that he gets increased rents on account of permitting liquor to be sold on his premises. This can not be true when the land owner prohibits its sale. It has been said that the law of the land is a part of each lease the same as if written in it; that the land owner knowing this and knowing that the business of trafficking in intoxicating liquors will create a lien, can protect himself by a bond. This is to hold that only those who are able to give bond will be accepted as tenants. This would work a hardship on the poor, who would be unable to get places in which to live.

Under the guise of protecting the public morals and the general health, the General Assembly has no right to enact that which will be utterly destructive to private rights. The General Assembly has no power to enact a law to restrain an evil-doer— when its execution will affect directly both the innocent and the guilty. The General Assembly has no power to levy a tax in restraint of the evils resulting from the sale of liquors which will, and which can in its enforcement, take away the property

of the innocent.   When the collection of such a tax does this, that part of the same which does this is illegal, unnecessary, arbitrary, unreasonable, unjust, and therefore, unconstitutional and void.

It is easy for the Legis'ature to relieve this burden by an amendment, and prevent the necessity of the land owner being compelled to seek relief by injunction from the courts—often tedious, slow and always expensive. .

Having held that that part of the Dow tax which engrafts upon the land of an innocent owner a part thereof, is against the Bill of Rights, the rights of man, and therefore unconstitutional and void, it is not necessary to pass on the question of the veracity of the witnesses as to the alleged illegal sale, or on the question as to what constitutes the business of trafficking in intoxicating liquors.

The prayer of the petition will be granted, and the defendants restrained from taking any further steps in or about the collection of the balance of this tax not raised by distress on the tenant's property.